**Gerald NEILL and Barbara Neill, Plaintiffs,**

v.

**GULF STREAM COACH, INC., et al., Defendants.**

**No. 96–658–CIV–J–10.**

United States District Court,
M.D. Florida,
Jacksonville Division.

May 29, 1997.

Gail A. Stafford, Jacksonville, FL, for Plaintiffs.

Bruce W. Bennett, Tampa, FL, Thomas Francis McMorrow, Jacksonville, FL, for Defendants.

**ORDER AND OPINION**

HODGES, District Judge.

■ This is an action in which the Plaintiffs assert a federal claim together with other claims based on state law.[1] The law of Florida supplies the rule of decision with regard to the merits of the state law claims. *See* 28 U.S.C. § 1652.

The Plaintiffs allege entitlement to punitive damages as part of their state law causes of action. The Defendants have moved (Docs. 7 and 13) to dismiss or strike those allegations based upon Fla.Stat. § 768.72, *et seq.* which establish special requirements regarding pleading, discovery procedures and the measure or amount of punitive damages recoverable under Florida law.[2]

Of immediate concern is that part of § 768.72 which prohibits any allegation of punitive damages until permitted by the court after a "reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages." The issue to be decided, therefore, is whether the state statute or the Federal Rules of Civil Procedure govern the time and manner in which allegations of punitive damages must be made in the circumstances of this case.

For the reasons that follow, I have decided that the state statute applies and that the motions to dismiss or strike should be granted.

**DISCUSSION**

The question is whether the Florida statute constitutes a matter of procedure thus rendering it inapplicable in actions brought in a federal court, or whether the statute creates substantive rights under the law of the state such that it should apply regardless of whether the case is litigated in a state or federal forum. The issue remains unresolved by the Eleventh Circuit Court of Appeals, and the approaches pursued and results obtained by the district courts in Florida have been quite diverse.[3] The weight of this authority, however, favors application of the statute.

■ Analysis begins with the *Erie* doctrine. Concerns about forum shopping, a desire that the law treat similarly situated litigants similarly, and constitutional limitations on the power of the Article III courts all compel the conclusion that "[t]here is no federal general common law." *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Phrased differently, where neither the federal Constitution nor a federal statute provides the rule of decision, and the matter is not one pertaining to the practice and procedure of the federal courts, state law must control. *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 105–10, 65 S.Ct. 1464, 1469–71, 89 L.Ed. 2079 (1945); *Erie*, 304 U.S. at 78, 58 S.Ct. at 822. The general rule of thumb is that, when state law supplies the rule of decision, state law governs matters of substance while federal law

---

1. The dispute arises out of the Plaintiffs' purchase of a recreational vehicle they now claim to be defective. The complaint alleges a violation of the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, in addition to various state law claims. The action was filed in state court and was removed by the Defendants to this Court based on diversity of citizenship. The Plaintiffs dispute the existence of complete diversity and have moved to remand. The presence of the federal claim, however, provides an independent basis for the exercise of jurisdiction. 15 U.S.C. § 2310(d)(1)(B) and 28 U.S.C. § 1441(a) and (c). The motion to remand will be denied.

2. Fla.Stat. § 768.72 provides:

   In any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide

a reasonable basis for recovery of such damages. The claimant may move to amend his complaint to assert a claim for punitive damages as allowed by the rules of civil procedure. The rules of civil procedure shall be liberally construed so as to allow the claimant discovery of evidence which appears reasonably calculated to lead to admissible evidence on the issue of punitive damages. No discovery of financial worth shall proceed until after the pleading concerning punitive damages is permitted.

3. For an outline of the various tacks taken by Florida's district courts see Rhett Traband, *An Erie Decision: Should State Statutes Prohibiting the Pleading of Punitive Damages Claims be Applied in Federal Diversity Actions*, 26 STETSON L.REV. 225, 236–48 (1996). *See also, Al–Site Corp. v. VSI Int'l, Inc.*, 842 F.Supp. 507, 511 n. 6 (1993).

**1152**

governs matters of procedure.[4] *Gasperini v. Center for Humanities, Inc.*, —— U.S. ——, ——, 116 S.Ct. 2211, 2219, 135 L.Ed.2d 659 (1996).

■ Ascertaining *Erie*'s command in any given case through the classification of a law or rule as substantive or procedural has proved decidedly more difficult than was originally anticipated. As a result, the Supreme Court has, over the years, increasingly refined the federal choice of law inquiry.[5] The two track analysis prescribed by *Hanna v. Plumer* currently governs the issue. 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Under the *Hanna* rubric, when faced with a potential conflict between federal and state law, the court should first determine whether the state law directly conflicts with some federal statute or rule. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 750, 100 S.Ct. 1978, 1985, 64 L.Ed.2d 659 (1980); *Reinke v. O'Connell*, 790 F.2d 850, 851 (11th Cir.1986). If a direct conflict exists, the federal statute or rule will always govern. A federal statute, if it applies, will always trump state law under the Supremacy Clause; there is no occasion to engage in an *Erie* analysis, which involves a comparison of state law with federal *decisional* law. The same is true with respect to a federal rule of procedure promulgated under the Rules Enabling Act. Subject to the limitations of that Act,[6] if a federal rule of procedure clearly controls a particular issue, then that federal rule also trumps any inconsistent state law or rule. *Gasperini*, —— U.S. at —— n. 7, 116 S.Ct. at 2219 n. 7; *Hanna*, 380 U.S. at 470–72, 85 S.Ct. at 1143–44.

■ Thus, when comparing a federal rule or statute with a corresponding state rule or statute, it is only when the court first decides that there is no direct conflict between them—that each could be given its own field of operation in parallel or, perhaps, tandem fashion—that the court may then determine whether to apply state law in order to achieve the "twin aims" of *Erie*. Those "twin aims" are the discouragement of forum shopping and the avoidance of inequitable administration of the laws, i.e., the likelihood that the applicability of particular substantive rights and duties would turn on the forum in which the action is brought. *Hanna*, 380 U.S. at 468, 85 S.Ct. at 1142.

■ Before undertaking a comparison between the Florida statute and the Federal Rules of Civil Procedure in order to determine whether there is, or is not, a direct collision between them, it is appropriate and instructive to be aware of both the history of Fla.Stat. § 768.72 and the statutory context and framework within which it exists (discussed in more detail, *infra*). It is important to know that the statute is not simply an isolated provision related to judicial procedure, but is instead a part of a cohesive and comprehensive statutory scheme establishing the substantive law of the state regulating the right to recover, as well as the measure and disbursement, of punitive damage awards. *See Smith v. Dep't of Insurance*, 507 So.2d 1080, 1092 n. 10 (Fla.1987). Indeed, as a part of the Florida Tort Reform and Insurance Act of 1986, the provisions regarding punitive damages (codified as §§ 768.72 and 768.73) were only one feature of an even broader statutory scheme addressing damages in general. *Id.* Looking forward to the twin aims of *Erie*, therefore, it

---

4. Although generally conceived of as a consideration applicable when subject matter jurisdiction is rooted in diversity of citizenship, *Erie*'s command applies with equal force to state claims brought within the court's subject matter jurisdiction by the presence of a federal claim in the civil action. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

5. The progression of the law can be found in almost any case purporting to apply *Erie* to chose between federal and state law and, therefore, need not be detailed here. *See, Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965);

*Byrd v. Blue Ridge Elec. Cooperative, Inc.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958); *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

6. In relevant part, the Rules Enabling Act provides:

(a) The Supreme Court shall have the power to prescribe general rules of practice and procedure and rules of evidence....

(b) Such rules shall not enlarge, abridge or modify any substantive right....

28 U.S.C. § 2072 (1995).

is clearly in the interest of those objectives to give full effect to the Florida statutory scheme in adjudicating state law claims if it is possible to do so within the constraints of existing law.

### A. Fla.Stat. § 768.72 and the Federal Rules

■ Turning, then, to the first prong of the *Hanna* analysis, the Court must inquire whether Fla.Stat. § 768.72 directly conflicts with a federal rule or statute. A federal statute or rule will directly conflict with a purportedly applicable state law when the federal law controls the issue before the court and in a way that leaves no room in which the state law can operate. *Burlington Northern R. Co. v. Woods,* 480 U.S. 1, 4–5, 107 S.Ct. 967, 969, 94 L.Ed.2d 1 (1987); *Walker,* 446 U.S. at 750–51, 100 S.Ct. at 1985. All that is required is a "straightforward exercise" in interpretation, giving the federal statute or rule its plain meaning, directed at ascertaining whether the point in dispute is within the federal law's field of operation. *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 26, 108 S.Ct. 2239, 2242, 101 L.Ed.2d 22 (1988); *Walker,* 446 U.S. at 750 n. 9, 100 S.Ct. at 1985 n. 9.

The Plaintiffs suggest that the statutory requirement of an evidentiary showing before a claim for punitive damages may be asserted runs afoul of Federal Rules of Civil Procedure 8(a) and 9(g).[7]

#### 1. Rule 8(a)

■ Rule 8(a) requires that a complaint plead only a "short and plain statement of the claim showing that the pleader is entitled to relief" accompanied by a "demand for judgment for the relief the pleader seeks." F.R.Civ.P. 8(a)(2), (3). On the other hand, the statute requires that no punitive damages claim be "permitted" until: (1) the claimant has made an evidentiary showing or proffer; and (2) the court makes a determination that there is a reasonable basis for the claim. Accordingly, the argument goes, a direct and irreconcilable conflict between the state statute and the federal rule exists because the statute requires far more than the short and plain statement and demand for judgment contemplated by the rule. To permit the application of the Florida statute, given the value of notice pleading embodied in the Federal Rules, "would subvert not only the intent of Rule 8, but the entire system of the Federal Rules." *State of Wisconsin Inv. Bd. v. Plantation Square Assoc., Ltd.,* 761 F.Supp. 1569, 1575 (S.D.Fla.1991). *See also Blount v. Sterling Healthcare Group,* 934 F.Supp. 1365, 1373–74 (S.D.Fla. 1996).

This position certainly has superficial appeal, but upon deeper reflection, the Court is not persuaded that any direct conflict exists because it is possible to give each of the provisions its full field of operation. To be sure, Rule 8(a)(2) and (3) contemplate a broad right to plead generally any claim entitling the pleader to relief. There is, however, no requirement that all claims be pleaded in the first complaint or that an entitlement to relief will be lost forever if not so pleaded. *See* Fed.R.Civ.P. 15. Rather, the rule requires only that *when* a claim for relief *is* pleaded, the pleading need only contain a short and plain statement showing the entitlement and a demand for judgment.[8]

---

7. The Plaintiffs have not argued, as have others, that the statutory provisions concerning financial worth discovery conflict with Fed.R.Civ.P. 26(b) and, in any event, the Court would be inclined to reject such a position. *See Sanders v. Mayor's Jewelers, Inc.,* 942 F.Supp. 571, 575 (S.D.Fla. 1996); *Al–Site,* 842 F.Supp. at 512–13; *State of Wisconsin Inv. Bd. v. Plantation Square Assoc., Ltd.,* 761 F.Supp. 1569, 1577–78 (S.D.Fla.1991).

8. Even if the rule is construed as including a timing component, the Court is doubtful that any conflict with Rule 8(a)(2) exists. It is instructive, in this regard, to distinguish a "short and plain statement of the claim," demonstrating an entitlement to relief, from an allegation that a partic-

ular type of remedy or form of relief, i.e., punitive damages, is merited. A "claim" showing that the pleader is entitled to relief—within the meaning of the rule—refers to the pleader's cause of action or legal theory of recovery, as opposed to a specific component of the relief that may be available should the claim be proved. Thus, there can be no such thing as a free standing "claim" for punitive damages. *See Galotti v. City of Stamford Connecticut,* 1996 WL 684409, at *4 (D.Conn.1996); *Kunz v. Dow Corning,* 1992 WL 390722, at *2 n. 1 (N.D.Ill.1992). As such, even if the rule is understood as governing when the pleading of certain matters is to occur, the only basis for conflict would be Rule 8(a)(3)'s

Thus, the state statute and the federal rule are capable of harmonious coexistence. Fla. Stat. § 768.72 bars the prosecution, and therefore the pleading, of a claim for punitive damages until the relevant threshold showing has been made. If the Plaintiff ultimately makes the required showing,[9] the complaint may be amended to add claims for punitive damages that, when made, must simply comport with the requirements of Rule 8(a).

No conflict between the Florida statute and Rule 8(a) appears to exist and the need for further inquiry under *Hanna* is therefore obviated.

### 2. *Rule 9(g)*

■ Rule 9(g) requires that when special damages are claimed, they shall be specifically stated in the relevant pleading. It is argued that Fla.Stat. § 768.72 conflicts with this rule because all the rule would require concerning punitive damages is that such damages be specifically stated. The Florida statute's requirements of an evidentiary showing and a judicial determination arguably exceed the minimum requirements of the rule.

The claim that the statute and Rule 9(g) are in conflict fails for much the same reason as the claim of conflict with Rule 8(a). Rule 9(g) requires nothing concerning *when* items of special damage are pleaded; rather, the rule requires only that when such damages are asserted, that they be asserted with specificity. The Florida statute, on the other hand, has nothing to say about the content of a pleading concerning punitive damages, but instead speaks only to when such an entitlement may be pleaded. *See Al–Site,* 842 F.Supp. at 512; *Plantation Square,* 761 F.Supp. at 1573. The lack of a timing provision in Rule 9(g) read in light of the liberal amendment provisions of Rule 15 compels the conclusion that the Rule 9(g) and § 768.72 "can exist side by side ... each controlling its own intended sphere of cover-

age without conflict." *Walker,* 446 U.S. at 752, 100 S.Ct. at 1986.

### B. *Fla.Stat. § 768.72 and Erie's Twin Aims*

Absent a collision between a federal rule or statute and the applicable state law, the Court is left to make the choice of state law with reference to the policies driving the *Erie* rule. Specifically, *Hanna* teaches that the Court should apply state law if the application of federal law alone would result in "'substantial' variations between state and federal litigation." *Hanna,* 380 U.S. at 467–68, 85 S.Ct. at 1142. *See Gasperini,* —— U.S. at ——, 116 S.Ct. at 2221. However, the Court must be mindful that not all substantial variations have *Erie* ramifications; rather, forum-driven differences in the character of the litigation are problematic only when they would encourage forum shopping or result in the inequitable administration of the laws. *Hanna,* 380 U.S. at 468, 85 S.Ct. at 1142.

### 1. *Inequitable Administration of the Law*

■ The failure to apply Fla.Stat. § 768.72, in my opinion, works an inequitable administration of law of the type that strikes at the heart of the policies underlying the *Erie* doctrine. As previously noted, Fla.Stat. § 768.72 was part of a substantive tort reform package, one of the objects of which was to create a positive legal right on the part of those sued in tort under Florida law to be free from punitive damages claims absent a threshold judicial determination of a reasonable basis for their assertion.

The conclusion that § 768.72 creates a substantive legal right in any party who is a target of a claim for punitive damages rests upon an examination of the legislative history and judicial construction of the statute. The statute was enacted in 1986 as a component of Florida's Tort Reform and Insurance Act of 1986. *See* 1986 Fla. Laws ch. 86–1 60, § 1, *et seq.* The Act was adopted in response to what the Florida legislature perceived to be a

---

requirement that the pleading contain a demand for judgment for the relief the pleader seeks.

**9.** It is noteworthy here that the state statute does not prohibit discovery of any evidence germane

to a party's entitlement to punitive damages, it only prohibits discovery of financial worth until such time as an allegation of entitlement has been allowed.

commercial liability insurance crisis caused, at least in part, by the then existing tort system.[10] The Act was necessarily broad in scope and had wide ranging effects upon the state's preexisting insurance regulatory system and upon the prosecution of causes of action sounding in tort.[11]

With specific regard to damage awards,[12] the Florida legislature determined that "there are certain elements of damage presently recoverable that have no economic value, except on a purely arbitrary basis" and sought to promote "a rational basis for determining damages for noneconomic losses." ch. 86–160, Preamble. This policy interest, as it applies to punitive damages, became concrete in Fla.Stat. § 768.72—the statute in question here—and Fla.Stat. § 768.73, which limits the amount and availability of punitive damages in certain civil actions. The latter statute precludes an award of punitive damages in excess of three times the amount of compensatory damages awarded to a claimant. Fla.Stat. § 768.73(1)(a). The statute further provides for the disposition of a punitive damages award as follows:

> [i]n any civil action, an award of damages is payable as follows: (a) Sixty-five percent of the award is payable to the claimant. (b) If the cause of action was based on personal injury or wrongful death, 35 percent of the award is payable to the Public Medical Assistance Trust Fund; otherwise, 35 per-

cent of the award is payable to the general revenue fund. Fla.Stat. § 768.73(1)(c)(2).

When read contemporaneously with § 768.73, and in light of the Florida Tort Reform and Insurance Act as a whole, it becomes readily apparent that § 768.72 is not simply a minor adjustment to the state's procedural rules concerning pleading and discovery; rather, § 768.72 is part of a statutory device directed at reducing the *in terrorem* effect and the expense of litigating cases in which "throw away" punitive damages claims are made as an added inducement to settle before the pleader has developed any evidentiary basis for the assertion. The punitive damages statutes are thus a part of a broader legislative scheme of tort and insurance reform.[13] ch. 86–160, Preamble. In short, Fla.Stat. § 768.72 represents far more than a minor procedural variation—it represents a means of achieving a substantive legislative goal. *See Smith v. Dep't of Insurance*, 507 So.2d 1080, 1092 (1987) (reasoning, in the context of a separation of powers challenge to the punitive damages statutes, that the statutes are "directly related to a substantive statutory scheme . . .").

Given the expressed legislative intent, Florida courts have consistently construed Fla.Stat. § 768.72 as creating a substantive legal right not to be exposed to a claim for punitive damages—as well as any contemplated financial worth discovery—without a

---

**10.** The legislature specifically found what it termed "a financial crisis in the liability insurance industry" resulting in a lack of availability of coverage to potential tortfeasors and, as a necessary concomitant, potential tort victims. For a detailed discussion of the Florida legislature's findings in this regard, *see Smith v. Dep't of Insurance*, 507 So.2d 1080, 1084 & n. 1, 2 (1987).

**11.** The Act altered or created seventy separate Florida statutes pertaining to, among several other matters, limiting certain rate-making provisions to workers' compensation and employers' liability insurance, ch. 86–160, § 12, imposing strict requirements on commercial insurance lines, ch. 86–160, § 9, abrogating joint and several liability for unintentional torts, ch. 86–160, § 60, providing that claims for punitive damages may be asserted only under specified circumstances, ch. 86–160, § 51, and limiting the availability and amount of punitive damages in certain civil actions, ch. 86–1 60, § 52.

**12.** Fl.Stat. § 768.71–81 all deal with awards of monetary damages in actions sounding in either tort or contract.

**13.** The Court is aware that, in Florida, public policy precludes liability insurance coverage for punitive damages awarded because of a defendant's own tortious behavior; however, the coverage of punitive damages for an insured who is vicariously liable for the tortious acts of another is not prohibited. *U.S. Concrete Pipe Co. v. Bould*, 437 So.2d 1061, 1064 (Fla.1983). Since punitive damages are, from an insurer's standpoint, a non-risk in most cases, punitive damages claims should not have a significant affect on the cost and availability of insurance except to the extent that such claims increase the cost of tort litigation in general. While the punitive damages statutes may not bear a strong relationship to the insurance regulatory aims of the Tort Reform and Insurance Act, they are strongly related to the tort reform goals sought by the Florida legislature.

prior judicial determination that a reasonable evidentiary basis exists for the claim. *Simeon, Inc. v. Cox,* 671 So.2d 158, 160 (Fla. 1996); *Globe Newspaper Co. v. King,* 658 So.2d 518, 519 (Fla.1995); *Kraft General Foods, Inc. v. Rosenblum,* 635 So.2d 106, 110 (Fla. 4th DCA 1994), *rev. denied,* 642 So.2d 1363 (Fla.1994). This right to be free from a punitive damages claim affords the party opposing such a claim protection from the expense of having to litigate meritless claims and the concomitant increase in the settlement value of a case once a claim for punitive damages is added. *See, e.g., Kraft,* 635 So.2d at 108.

Once one concludes that the state statute creates a positive legal right, to deny a federal defendant its protection, particularly when the application of the statute impinges on no important federal interest, is to thwart one of the twin aims of *Erie,* namely, the avoidance of inequitable administration of the laws while simultaneously engaging in precisely the type of common law making the Erie opinion abolished. *Erie,* 304 U.S. at 78, 58 S.Ct. at 822–23.

Other federal district courts in Florida have declined to follow the Florida courts' construction of the statute, reasoning that a state court's characterization of a state law as procedural or substantive for some other purpose is not pertinent to whether the law is procedural or substantive in terms of the Erie inquiry. *Kingston Square Tenants Assoc. v. Tuskegee Gardens, Ltd.,* 792 F.Supp. 1566, 1579 (S.D.Fla.1992); *Plantation Square,* 761 F.Supp. at 1575; *Citron v. Armstrong World Indus., Inc.,* 721 F.Supp. 1259, 1261. *See Guaranty Trust,* 326 U.S. at 108, 65 S.Ct. at 1469 ("Neither 'substance' nor 'procedure' represents the same invariants. Each implies different variables depending upon the particular problem for which it is used"). To be sure, a state court's use of the substantive-procedural nomenclature to describe a statute is not dispositive of the federal choice of law; however, it is not the Florida courts' mere use of the word "substantive" that drives the analysis here. Rather, the court places emphasis on the Florida courts' construction and application of the statute as creating a positive right to be free from a punitive damages claim absent a judicial determination that the claim has a reasonable evidentiary basis. When seen in this light, the conclusion that the statute creates a substantive legal right flows inexorably from the well established principle that the decisions of the state's highest court are conclusive on issues of state statutory construction. *Fidelity Union Trust Co. v. Field,* 311 U.S. 169, 178–79, 61 S.Ct. 176, 178–79, 85 L.Ed. 109 (1940). *See also Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782–83, 18 L.Ed.2d 886 (1967) ("[T]he State's highest court is the best authority on its own law"). Thus, the statute should be applied in federal diversity actions.

### 2. Forum Shopping

■ The Court is also of the opinion that a plaintiff's incentive to select a federal forum would increase significantly should the Court choose to ignore the state statute. The statute seeks to screen out plaintiffs with baseless punitive damages claims interposed to harass or increase settlement value. It is exactly this type of plaintiff that the state legislature sought to deter by drafting the statute, and it is exactly this type of plaintiff that would be given an incentive to bring suits in federal court if the statute is not applied here. Any failure to follow the statute in federal court would pose an unacceptable risk of forum shopping and, therefore, Erie counsels in favor of applying Fla. Stat. § 768.72.

### C. Application of § 768.72

■ The Plaintiffs argue that, because the complaint alleges fraudulent concealment, the allegations of the complaint constitute a proffer sufficient to justify the claims for punitive damages. While the complaint does make allegations of fraudulent concealment, it does so only in a cursory manner and does not constitute a proffer creating a reasonable basis for recovery of punitive damages. *See Globe Newspaper Co.,* 658 So.2d at 520 ("To allow punitive damages claims to proceed as before would render section 768.72 meaningless").

Accordingly, upon due consideration:

(1) the Defendants' motions to dismiss or strike the claims for punitive damages (Docs. 7 and 13) are GRANTED and all claims for punitive damages made by the complaint are hereby STRICKEN without prejudice.

(2) the Plaintiffs' motion to remand (Doc. 22) is DENIED.

IT IS SO ORDERED.