**RTC MORTGAGE TRUST 1994 N–1, a limited liability Delaware business trust, Plaintiff,**

**v.**

**FIDELITY NATIONAL TITLE INSURANCE COMPANY, Nations Title Insurance Company, Eastern Developers Abstract, Inc., Caine, Dipasqua, Sloane & Raffaele f/k/a Caine, Dipasqua, Sloane, Raffaele & Nigro, Lawyers Title Insurance Corporation, and Rocco M. Nigro, Defendants.**

No. CIV. A. 96–5874.

United States District Court,
D. New Jersey.

Oct. 20, 1997.

Jonathan L. Goldstein, John A. Adler, Hellring, Lindeman, Goldstein & Siegal, Newark, NJ, for Plaintiff, RTC Mortgage Trust 1994 N–1, a limited liability Delaware business trust.

Michael S. Miller, Tompkins, McGuire & Wachenfeld, Newark, NJ, for Defendant, Caine, DiPasqua, Sloane & Raffaele f/k/a Caine, DiPasqua, Sloane, Raffaele & Nigro.

Charles J. Vinicombe, Drinker, Biddle & Reath, Princeton, NJ, for Defendant, Lawyers Title Insurance Corporation.

Josiah A. Knapp, Tomar, Simonoff, Adourian, O'Brien, Kaplan, Jacoby & Graziano, Cherry Hill, NJ, for Defendants, Fidelity National Title Insurance Company and Nations Title Insurance Company.

Rocco M. Nigro, Media, PA, pro se.

## OPINION

ORLOFSKY, District Judge.

This case requires the Court to address several novel and thorny questions of federal and state law arising from the enactment of a relatively recent New Jersey statute, N.J.S.A. 2A:53A–26 to 29, the so-called "Affidavit of Merit" statute, which became effective on June 29, 1995. This statute provides that in order to survive a motion to dismiss for failure to state a claim, a plaintiff who alleges negligence by a professional must submit an affidavit (an "affidavit of merit") from an appropriately qualified individual stating his or her opinion on the merits of the claim.

First among the knotty issues which the Court must decide is whether the Affidavit of Merit statute should be applied by a federal court sitting in diversity. This question compels the Court to apply the criteria enunciated in *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). If the Affidavit of Merit statute does apply in this Court, the Court must then predict how the New Jersey Supreme Court would decide when asked whether an affidavit of merit must be filed where the defendant is an out-of-state law firm which is practicing law in New Jersey in violation of the New Jersey Supreme Court Rules and the Rules of Professional Conduct promulgated by the New Jersey Supreme Court.

Caine, DiPasqua, Sloane & Raffaele, formerly known as Caine, DiPasqua, Sloane, Raffaele & Nigro, has moved to dismiss the Complaint and all cross-claims asserted against it under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. For the reasons set forth below, I conclude that the Affidavit of Merit statute should be applied by a federal court sitting in diversity. In this case, however, where the defendant is an out-of-state law firm not qualified to practice law in New Jersey, I predict that the New Jersey Supreme Court would conclude that the statute does not require the filing of an affidavit of merit in an action for professional malpractice.

## I. Facts and Procedural History

This litigation involves a bad land deal, an allegedly bungled title search, and an allegedly negligently prepared opinion letter issued by an out-of-state law firm. The alleged legal malpractice resulted in a delay of five years before Plaintiff was able to assume priority among the creditors of a failed land partnership. Ultimately, the alleged negligence resulted in Plaintiff's recoupment of about a third of its original loan amount.

Assuming the truth of the allegations contained in the Amended Complaint for the purposes of this motion, *see, e.g., Gomez v. Toledo*, 446 U.S. 635, 636, 100 S.Ct. 1920, 1921–22, 64 L.Ed.2d 572 (1980); *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir.1991); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990), the facts underlying this litigation are as follows: Plaintiff, RTC Mortgage Trust 1994 N–1 ("RTC"), is a limited liability Delaware business trust and the assignee of a mortgage on a 7–acre piece of property located in Mount Laurel, New Jersey. *See* Amended Complaint of Plaintiff, RTC, p. 1, ¶ 1 (dated June 10, 1997) (hereinafter Amended Compl.). The original lender/mortgagee was Home Federal Savings & Loan Association ("HomeFed"), which loaned Atrium II Limited Partnership ("Atrium II"), a Delaware limited partnership, $13.5 million. *Id.* at ¶¶ 1, 6.

The law firm representing Atrium II in the transaction was Defendant, Caine, DiPasqua, Sloane, Raffaele & Nigro, now known as Caine, DiPasqua, Sloane & Raffaele ("Caine, DiPasqua"). Id. at ¶ 10. Caine, DiPasqua is a Pennsylvania law firm apparently organized as a professional corporation with offices in Media and West Chester, Pennsylvania. *Id.* at ¶ 4; *see also* Certification of John A. Adler (dated July 29, 1997) (hereinafter Adler Certif.), Exhibit C, Letter from Caine, DiPasqua to HomeFed (dated Aug. 29, 1988) (hereinafter 8/29/88 Opinion Letter).

Leading up to the transaction, Title USA, a title company, prepared a title report on the property. Defendant, Eastern Developers Abstract, Inc. ("Eastern"), whose president or owner was Defendant, Rocco M. Nig-

ro ("Nigro"), performed a title search on behalf of Title USA. Amended Compl. at ¶¶ 9, 11. The title report prepared by Title USA, with the information provided to it by Eastern, allegedly failed to reveal mortgages and/or security interests which would be (or asserted to be) superior to HomeFed's mortgage, or the report wrongly revealed mortgages and/or security interests as removed. *Id.* at ¶¶ 12, 13, 15, 21. The successor in interest of Title USA is either Defendant, Fidelity National Title Insurance Company ("Fidelity National"), or Defendant, Nations Title Insurance Company ("Nations Title"). *See id.* at ¶¶ 2, 7, 9, 12; *but see id.* at ¶ 8.

In preparation for the consummation of the loan transaction, on August 29, 1988, Caine, DiPasqua provided an opinion letter regarding numerous aspects of the property and the transaction. The letter was signed by Nigro, who, in addition to being either president or owner of Eastern, was also a partner at Caine, DiPasqua. The letter stated, among other things, that the "[m]ortgage, [s]ecurity [a]greement, and [f]inancing [s]tatements are effective to create a first lien security interest in the ... property." 8/29/88 Opinion Letter at p. 3; *see also id.* at p. 2 ("[m]ortgage and [s]ecurity [a]greement constitutes a first lien security interest"); Amended Compl. at ¶¶ 11, 13.

In addition to preparing the title report, Title USA also issued a title insurance policy which indicated that HomeFed's mortgage was a first mortgage lien. *Id.* at ¶ 14. Defendant, Lawyers Title Insurance Corporation, issued a title reinsurance policy. *Id.* at ¶ 26.

Late in 1990, HomeFed began foreclosure proceedings against Atrium II. These proceedings were stayed when Atrium II filed a

petition in the United States Bankruptcy Court for the District of New Jersey. Fidelity Bank, N.A. ("Fidelity Bank"), an entity apparently unrelated to Fidelity National, filed an adversary complaint in the Bankruptcy Court claiming that it had liens on the property which were superior to HomeFed's. Eventually, after much litigation, the District Court reversed the Bankruptcy Court's determination that Fidelity Bank's liens had priority. The Third Circuit affirmed this decision. *See id.* at ¶¶ 17–19; *see also In re Atrium II Ltd. Partnership,* 60 F.3d 816 (3d Cir.1995) (mem.). This litigation then ensued.

On November 4, 1996, RTC filed a Complaint against Fidelity National, Nations Title, Eastern, Lawyers Title, and Caine, DiPasqua, in the Superior Court of New Jersey, Law Division, Burlington County, Docket No. BUR–L–03348–96. The Complaint alleges that: 1) Title USA, the predecessor in interest of, *inter alia,* Fidelity National, was negligent in preparing its title report, breached its contractual relationship with HomeFed, and was liable under the title insurance policy; 2) Lawyers Title was liable under the title reinsurance policy; 3) Eastern was negligent in performing its title search; 4) Caine, DiPasqua was negligent in preparing "its" opinion letter.[1] *See* Complaint of Plaintiff, RTC, ¶ 32 & *passim* (dated Nov. 4, 1996) (hereinafter Compl.); *see also* Amended Compl. at ¶¶ 38–39.

On December 17, 1996, Caine, DiPasqua filed in this Court a Notice of Removal pursuant to 28 U.S.C. § 1446(a) alleging, *inter alia,* that the Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a). On February 20, 1997, March 7, 1997, and March

---

1. The Complaint as originally interposed does not allege that any particular attorney at Caine, DiPasqua engaged in the negligent conduct. The Complaint alleges that Nigro was a partner at Caine, DiPasqua and the president or owner of Eastern, but does not even tangentially connect Nigro to the malpractice. *See* Compl. at ¶¶ 10, 11, 32. Despite their assertion that Nigro is "the main culprit in RTC's negligence action," *see* RTC's Memorandum in Opposition to Motion to Dismiss 2 (dated July 30, 1997); *see also id.* at 2 (Caine's "liability is based solely on the actions of Nigro"), 7 (Caine's "liability is dependent on

Nigro's liability"), the Complaint cannot be read as a claim for damages resulting from malpractice by an individual attorney. Only after adding Nigro as an individual defendant did RTC's Amended Complaint connect Nigro to the alleged malpractice. *See* Amended Compl. at ¶¶ 31–36. Even then, RTC's Amended Complaint hedges its bets about to whom the alleged negligence is attributable. The allegedly negligent opinion letter is both Caine, DiPasqua's and Nigro's. *Compare id.* at ¶¶ 34–35 ("its") with *id.* at ¶¶ 38–39 ("his").

14, 1997, respectively, Caine, DiPasqua, Lawyers Title, Fidelity National, and Nations Title answered the Complaint and asserted cross-claims of indemnification and contribution against one another, as well as against Eastern, which has not yet appeared in the action.[2] On March 13, 1997, Caine, DiPasqua answered all cross-claims which had been or would be asserted against it by co-Defendants. On March 14, 1997, Lawyers Title answered the cross-claim asserted by Caine, DiPasqua and on March 27, 1997, Lawyers Title answered the cross-claims asserted by Nations Title and Fidelity National.

On June 16, 1997, after learning that Nigro was no longer a partner of Caine, DiPasqua, RTC filed an Amended Complaint which added Nigro as a defendant. The claim against Nigro asserted that he was negligent in: 1) failing to seek discharges of the liens which were later claimed to be superior to HomeFed's mortgage; and 2) stating in "his" opinion letter that HomeFed's security interest would be a first lien. *See* Amended Compl. at ¶¶ 31–36.

On June 27, 1997, Lawyers Title answered the Amended Complaint, reasserting its cross-claims against Caine, DiPasqua, Eastern, Nations Title, and Fidelity National, and adding cross-claims against Nigro. On July 7, 1997, Caine, DiPasqua answered the

Amended Complaint, reasserting cross-claims against Lawyers Title, Eastern, Nations Title, and Fidelity National, and adding cross-claims against Nigro. On October 6, 1997, Nigro answered the Amended Complaint.

■ Currently before the Court is Caine, DiPasqua's motion to dismiss the Amended Complaint. This Court may exercise jurisdiction over the action pursuant to 28 U.S.C. § 1332(a) as the amount in controversy exceeds $50,000,[3] exclusive of interest and costs, and is between citizens of different states.[4]

## II. Standards on Motion to Dismiss

In considering a motion to dismiss under Rule 12(b)(6), the court may dismiss a complaint if it appears certain that the plaintiff cannot prove any set of facts in support of its claims which would entitle it to relief. *See, e.g., Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988). While all well-pled allegations are accepted as true and reasonable inferences are drawn in the plaintiff's favor, *see, e.g., Gomez v. Toledo,* 446 U.S. 635, 636, 100 S.Ct. 1920, 1921–22, 64 L.Ed.2d 572 (1980); *Schrob v. Catterson,* 948 F.2d 1402, 1405 (3d Cir.1991); *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990), the court

2. Fidelity National and Nations Title answered the Complaint jointly and therefore, did not assert cross-claims against each other. Lawyers Title also asserted a cross-claim of subrogation against Caine, DiPasqua and Eastern.

3. On October 19, 1996, Congress raised the amount-in-controversy requirement for diversity jurisdiction from $50,000 to $75,000 by amending 28 U.S.C. § 1332(a). Federal Courts Improvement Act of 1996, Pub.L. No. 104–317, § 205, 110 Stat. 3847, 3850 (1996). The amendment became effective 90 days after passage of the amendment and is not retroactive. *See, e.g., McBride v. Rey,* 1997 WL 416265 (E.D.Pa. July 8, 1997); *Central Fiber Corp. v. Site Svcs. Ltd.,* 962 F.Supp. 1426, 1427 (D.Kan.1997) (citing cases). Because RTC's Complaint was filed before the effective date of the amendment to the jurisdictional statute, the $50,000 amount-in-controversy requirement is applicable to this action.

4. For corporations, the key variables in determining whether the parties are diverse under 28 U.S.C. § 1332(c)(1) are their states of incorporation and principal places of business. Fidelity

National and Nations Title are alleged to maintain offices in New York. *See* Amended Compl. at ¶ 2. Lawyers Title admits to being a Virginia corporation and to maintaining offices in that state. *See,* Answer of Defendant, Lawyers Title ¶ 5 (dated March 6, 1997). Caine, DiPasqua appears to be a professional corporation, a proposition not rebutted by counsel at oral argument, and Caine, DiPasqua admits to maintaining offices in Pennsylvania. *See* Answer of Defendant, Caine DiPasqua ¶ 4 (dated Feb. 20, 1997). The individual defendant, Nigro, appears to be a citizen of Pennsylvania. *See* Answer of Defendant, Rocco M. Nigro (dated Oct. 6, 1997); *see generally* Notice of Removal ¶¶ 9–13 (dated Dec. 16, 1997). Finally, RTC is a business trust organized under the laws of the state of Delaware pursuant to 12 Del.Code Ann. tit. 12, § 3801, with offices in New Jersey, *see* Amended Compl. at p. 1. *See, e.g., Navarro Savings Assoc. v. Lee,* 446 U.S. 458, 462, 463 n. 10, 466, 100 S.Ct. 1779, 1782, 1783 n. 10, 64 L.Ed.2d 425 (1980) (citizenship of business trust not determined with reference to beneficiaries or with reference to corporation-like attributes, but rather with reference to real party in interest).

may dismiss a complaint where, under any set of facts which could be shown to be consistent with a complaint, the plaintiff is not entitled to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Finally, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989) (noting that this procedure "streamlines litigation by dispensing with needless discovery and fact-finding").

## III. Discussion

### A. The Affidavit of Merit Statute

Caine, DiPasqua's motion to dismiss the Complaint and all cross-claims asserted against it is based on the Affidavit of Merit statute, N.J.S.A. §§ 2A:53A–26 *et seq.* The centerpiece of the statute is N.J.S.A. § 2A:53A–27, which provides:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause. The person executing the affidavit shall be licensed in this or any other state; have particular expertise in the general area or specialty involved in the action, as evidenced by

board certification or by devotion of the person's practice substantially to the general area or specialty involved in the action for a period of at least five years. The person shall have no financial interest in the outcome of the case under review, but this prohibition shall not exclude the person from being an expert witness in the case.

> In lieu of an affidavit of merit, a plaintiff may provide a sworn statement:

> setting forth that: the defendant has failed to provide plaintiff with medical records or other records or information having a substantial bearing on preparation of the affidavit; a written request therefor along with, if necessary, a signed authorization by the plaintiff for release of the medical records or other records or information requested, has been made by certified mail or personal service; and at least 45 days have elapsed since the defendant received the request.

N.J.S.A. § 2A:53A–28. The statute defines "licensed person" to mean any person who is "licensed as," among other things, "an attorney admitted to practice law in New Jersey." N.J.S.A. § 2A:53A–26(c).[5] Finally, N.J.S.A. § 2A:53A–29 provides that "failure to provide an affidavit or a statement in lieu thereof ... shall be deemed a failure to state a cause of action." N.J.S.A. § 2A:53A–29.

Caine, DiPasqua claims that no affidavit of merit was filed within 60 days of its filing an Answer to the Complaint. The Answer was filed on February 20, 1997 and the 60–day period would have expired on April 21, 1997. Additionally, RTC did not request the 60–day extension allowable under the statute, nor did RTC file an affidavit of merit during the period for which an extension could have been granted, *i.e.,* the period ending on or about June 23, 1997.[6] Indeed, the affidavit opining on RTC's claim was not prepared until July 29, 1997. *See* Adler Certif., Exh.

---

**5.** The statute uses the definition of "licensed person" in N.J.S.A. § 2A:53A–26 both for the purpose of defining when an affidavit is necessary ("in any action for damages ... resulting from an alleged act of malpractice or negligence by a licensed person") and also for the purpose of defining who may provide the affidavit ("an affi-

davit of an appropriate licensed person"). N.J.S.A. § 2A:53A–27.

**6.** Since 60 days after April 21, 1997 was June 21, 1997, a Saturday, a 60 day extension would have run to Monday, June 23, 1997. *See Fed.R.Civ.P.* 6(a).

E, Affidavit of Merit of S. David Brandt, Esq. (dated July 29, 1997).

RTC responds that, for various reasons, the affidavit was not required on or before April 21, 1997. Also, RTC argues that the statute should not be applied ·by a federal court sitting in diversity. In response to their initial arguments, the Court requested supplemental briefing on a number of issues, including the question of whether the statute is applicable in federal court under the analysis required by *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. ·1136, 14 L.Ed.2d 8 (1965). In its request for supplemental briefing, the Court invited the parties to compare the New Jersey statute to a number of other similar state statutes. The Court also asked whether Caine, DiPasqua is a "licensed person" within the meaning of the statute.

### B. Analysis of the Affidavit of Merit Statute under *Hanna* and *Erie*

The Court must first decide whether the Affidavit of Merit statute should be applied by a federal court sitting in diversity. If the statute is not to be applied in federal court, then Caine, DiPasqua's motion must be denied. This inquiry has occasionally (and both misleadingly and unhelpfully), been characterized as a question of whether the state statute is "substantive" or "procedural." However, the test is much more structured, yet no less difficult to apply, than the frequently daunting choice between the two. *See Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, ——, 116 S.Ct. 2211, 2219, 135 L.Ed.2d 659 (1996) ("classification of a law as 'substantive' or 'procedural' for *Erie* purposes is sometimes a challenging endeavor"); *Edelson v. Soricelli,* 610 F.2d 131, 133 (3d Cir.1979) (substance-procedure distinction "provides no effective guidance" in solving problems arising in diversity cases).

In order to determine the applicability of the Affidavit of Merit statute in a federal court sitting in diversity, the Court must first determine whether the situation at hand is covered by one of the Federal Rules of Civil Procedure. *See Hanna v. Plumer,* 380 U.S. 460, 471, 85 S.Ct. 1136, 1143–44, 14 L.Ed.2d 8 (1965) (requiring "direct collision" between state and federal law); *see also Gasperini,* 518 U.S. at ——–—— & n. 7, 116 S.Ct. at 2219–20 & n. 7; *Burlington N. R.R. Co. v. Woods,* 480 U.S. 1, 4–5, 7, 107 S.Ct. 967, 969–70, 970–71, 94 L.Ed.2d 1 (1987) (identifying inquiry as whether a federal rule "occupies [a state rule's] field of operation"); *Walker v. Armco Steel Corp.,* 446 U.S. 740, 749–50, 100 S.Ct. 1978, 1984–85, 64 L.Ed.2d 659 (1980) ("the first question must therefore be whether the scope of the [f]ederal [r]ule is sufficiently broad to control the issue"). If one or more federal rules covers the point in dispute and the rule is both constitutional and does not "abridge, enlarge, or modify any substantive right," *see* 28 U.S.C. § 2072, then the state statute does not apply. *Burlington,* 480 U.S. at 5–6, 107 S.Ct. at 969–70; *Stewart Org.,* 487 U.S. at 27 & n. 5, 108 S.Ct. at 2242 & n. 5.

The Supreme Court has clarified what the relationship between the federal and state rules should be in order for the federal rule to predominate. In *Stewart Organization, Inc. v. Ricoh,* the Supreme Court held that the "direct collision" language in *Hanna* "expresses the requirement that the federal statute be sufficiently broad to cover the point in dispute." *Stewart Org., Inc. v. Ricoh,* 487 U.S. 22, 27 n. 4, 108 S.Ct. 2239, 2242 n. 4, 101 L.Ed.2d 22 (1988) (noting that "it would make no sense for the supremacy of federal law to wane precisely because there is no state law directly on point").

The Supreme Court has also attempted to clarify how federal rules or statutes should be read where they potentially conflict with a state law. *See Gasperini,* 518 U.S. at —— n. 7, 116 S.Ct. at 2219 n. 7 ("[f]ederal courts have interpreted the Federal Rules ... *with sensitivity* to important state interests and regulatory policies") (emphasis added); *Stewart Org.,* 487 U.S. at 37–38, 108 S.Ct. at 2247–48 ("in deciding whether a federal statute or [r]ule ... encompasses a particular issue, a broad reading that would create significant disuniformity between state and federal courts should be avoided if the text permits") (Scalia, J. dissenting); *but · see Walker,* 446 U.S. at 750 n. 9, 100 S.Ct. at

1985 n. 9 ("This is not to suggest that the Federal Rules ... are to be narrowly construed in order to avoid a 'direct collision' with state law. The ... Rules should be given their plain meaning.").

Some varying approaches have developed as to the role of *Erie* concerns (*i.e.,* forum-shopping and inequitable administration of the law) in determining whether a situation is covered by a federal rule or statute. *Hanna* stated somewhat obliquely that:

> though a court, in measuring a[f]ederal [r]ule against the standards contained in the Enabling Act and the Constitution, need not wholly blind itself to the degree to which the Rule makes the character and result of the federal litigation stray from the course it would follow in state court, ... it cannot be forgotten that the *Erie* rule, and the guidelines suggested in *York,* were created to serve another purpose altogether.

*Hanna,* 380 U.S. at 473, 85 S.Ct. at 1145; *see* 17 James Wm. Moore, *et al., Moore's Federal Practice* § 124.05 (3d ed 1997); 19 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure: Jurisdiction* § 4508 & n. 63 (2d ed.1996) (noting *Hanna*'s "somewhat cryptic caveat"). Varying interpretations of this language have been given. *Compare, e.g., Olympic Sports Prod. v. Universal Athletic Sales,* 760 F.2d 910, 914 (9th Cir.1985) ("a court should not ignore *Erie* principles when testing a federal rule under *Hanna*"), *cert. denied,* 474 U.S. 1060, 106 S.Ct. 804, 88 L.Ed.2d 780 (1986); *Weems v. McCloud,* 619 F.2d 1081, 1097–98 & n. 38 (5th Cir.1980); *Witherow v. Firestone Tire & Rubber Co.,* 530 F.2d 160, 164–65 (3d Cir.1976) ("concern for states' rights and prerogatives can never be out of place") with *Neill v. Gulf Stream Coach, Inc.,* 966 F.Supp. 1149, 1152 (S.D.Fla.1997) (only when no conflict between federal and state laws may court consider *Erie* policies).

 ▮ If there is no federal rule controlling the issue, the Court proceeds to engage in the "relatively unguided *Erie* [c]hoice." *Hanna,* 380 U.S. at 471, 85 S.Ct. at 1143–44 (distinguishing between the analysis required by *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and that

required by the Rules Enabling Act); *see, e.g., Kanouse v. Westwood Obstetrical & Gynecological Assoc.,* 505 F.Supp. 129, 130 (D.N.J.1981). The "*Erie* [c]hoice" requires the Court to ask if the application of the state law is likely to be determinative of the outcome of the lawsuit. *See Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1944). *Guaranty Trust* explained the rationale for the "outcome determinative" test:

> In essence, the intent of [*Erie* ] was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a [s]tate court.
>
> Plainly enough, a statute that would completely bar recovery in a suit if brought in a [s]tate court bears on a [s]tate-created right vitally and not merely formally or negligibly. As to consequences that so intimately affect recovery or non-recovery a federal court in a diversity case should follow [s]tate law.

*Id.* at 109, 110, 65 S.Ct. at 1470; *see also Ragan v. Merchants Transfer & Warehouse Co.,* 337 U.S. 530, 533–34, 69 S.Ct. 1233, 1234–35, 93 L.Ed. 1520 (1949) ("[w]e cannot give [a cause of action] longer life in the federal court than it would have had in the state court without adding something to the cause of action. We may not do that consistently with [*Erie* ]."). *Hanna* also refined the outcome determinative test to underscore that it should not be unjustifiably elevated above all other concerns. Rather, it should be applied with reference to the twin aims of *Erie:* discouragement of forum-shopping and avoidance of inequitable administration of the laws, *i.e.,* discrimination between in-state and out-of-state residents. *Hanna,* 380 U.S. at 468, 85 S.Ct. at 1142 (court must ask whether application of state rule "would make so important a difference to the character or result of the litigation that failure to enforce it would unfairly discriminate against citizens of the forum state, or whether application of the rule would have so important an effect

upon the fortunes of [the litigants] that failure to enforce" it would be likely to promote forum-shopping); *see also Gasperini*, 518 U.S. at —— & n. 8, 116 S.Ct. at 2220 & n. 8; *Walker*, 446 U.S. at 747, 100 S.Ct. at 1983.

■ Finally, if the state law is outcome determinative, then the Court must ask whether there is an overriding federal interest justifying application of federal law. This was clearly enunciated in *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), which thereby tempered the scope of the outcome determinative test. In *Byrd*, the Supreme Court, conceding that the availability of a jury trial could be outcome determinative, "did not think the likelihood of a different result is so strong as to require the federal practice ... to yield to [a] state rule." *Id.* at 540, 78 S.Ct. at 902; *see also id.* at 538–39, 78 S.Ct. at 901–02 (noting that "state laws cannot alter the essential character or function of a federal court"); *Gasperini*, 518 U.S. at ——, 116 S.Ct. at 2238 (Scalia, J., dissenting). More recently the Supreme Court has noted that federal interests and state interests may be accommodated, if possible. *See Gasperini*, 518 U.S. at ——, 116 S.Ct. at 2224.[7]

### 1. Federal Rules

While seemingly the easiest of the tests to apply, determining whether a particular situation is covered by one of the Federal Rules of Civil Procedure or a federal statute is not always so straightforward. *See, e.g., Gasperini*, 518 U.S. at ——, 116 S.Ct. at 2239 (discussing scope of Fed.R.Civ.P. 59) (Scalia, J. dissenting); *see also Stewart Org.*, 487 U.S. at 34–38, 108 S.Ct. at 2246–49 (discussing scope of 28 U.S.C. § 1404) (Scalia, J. dissenting).

RTC has argued that the Affidavit of Merit statute conflicts with and is covered by Rules 8, 9, and 11 of the Federal Rules of Civil Procedure. First, addressing Rules 8 and 9 together, and then Rule 11, the Court finds that there is no collision, let alone a direct one, between any federal rule and the Affidavit of Merit statute.

### a. Rules 8 and 9

■ Rule 8 provides the general rules of pleading in the federal courts. As far as what is required of a complaint, the rule demands nothing more than "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a), and provides that "each averment ... shall be simple, concise, and direct," Fed.R.Civ.P. 8(e). RTC argues that the affidavit of merit required by the N.J.S.A. § 2A:53A–27 is a "supplemental pleading," and, therefore, that Rule 8 should predominate over a conflicting state standard. RTC further claims that the Affidavit of Merit statute conflicts with Rule 9 because the statute requires particularity in situations other than those listed in Rule 9. The Court disagrees with RTC as to the characterization of the statute.

■ The central purpose of the modern "short and plain statement" standard is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," and not much more. *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Lundy v. Adamar of N.J., Inc.*, 34 F.3d 1173, 1194 n. 14 (3d Cir. 1994) (Becker, J., concurring in part and dissenting in part); *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 702 (3d Cir.1996) (federal pleading standard emphasizes brevity); *Burks v. City of Philadelphia*, 904 F.Supp. 421, 423–24 (E.D.Pa.1995) (finding that overly detailed complaint departed from letter and spirit of Rule 8 standard). In addition, Rule 9(b) requires that certain allegations related to *state of mind* be pleaded with particularity. *See, e.g., Piazza v. Major League Baseball*, 831 F.Supp. 420, 428 (E.D.Pa.1993) (interpreting *Leatherman* and finding that federal courts may not apply pleading requirements more stringent than those provided in rules); 5 *Federal Practice & Procedure: Civil* § 1291 ("Rule 9 must be read in light of the basic pleading philosophy set forth in Rule 8"). Consequently, the pleading theory embodied in Rules 8 and 9 leaves further procedures, specifically, dis-

---

**7.** For a helpfully succinct, ·pre-*Gasperini* summary of the entire analysis, see generally Erwin

Chemerinsky, *Federal Jurisdiction* 301–09 (2d ed 1995).

covery and motions to dismiss or for summary judgment, to perform other functions that historically had been performed by pleadings. *Conley*, 355 U.S. at 47–48, 78 S.Ct. at 102–03 (other procedural devices, not pleadings, are designed "to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues"); *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168–69, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993) (reliance is on discovery and summary judgment to weed out unmeritorious claims); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986) (shift to notice pleading means that motions for summary judgment, not motions to dismiss, will be used to test factual allegations of complaint and weed out meritless cases); 5 *Federal Practice & Procedure: Civil* § 1202 (modern, federal pleading does not serve purposes of issue-narrowing, fact development, or disposing of meritless claims).

For the proposition that the Affidavit of Merit statute conflicts with Rule 8 and 9, RTC relies in part on *Boone v. Knight*, 131 F.R.D. 609 (S.D.Ga.1990), which held that a Georgia statute somewhat similar to the New Jersey statute was "essentially a pleading requirement" that conflicted with the "notice pleading" standard set forth in Rule 8. *Id.* at 611; *but see Brown v. Nichols*, 8 F.3d 770, 773 (11th Cir.1993) (declining to decide whether Georgia statute is in conflict with federal rules and applicable in federal court); *see generally* Robert K. Harris, Case Comment, *Brown v. Nichols: The Eleventh Circuit Refuses to Play the Erie Game with Georgia's Expert Affidavit Requirement*, 29 Ga. L.Rev. 291 (1994). Assuming, *arguendo*, that conflict, a comparison of the several essential differences between the Georgia statute and the New Jersey statute reveals a striking contrast between the two and illustrates quite conclusively that the New Jersey statute does not conflict with the pleading rules set forth in Rules 8 or 9, or with the policies behind notice pleading.

First, the timing of the filing of the affidavit is quite different in each statute. N.J.S.A. § 2A:53A–27 requires that the plaintiff submit its affidavit *"within 60 days following* the date of filing of the answer to the complaint by the defendant." N.J.S.A. § 2A:53A–27 (emphasis added). It can be easily inferred from the statute that if a defendant does not answer the complaint, but chooses instead to forego the protections provided by the Affidavit of Merit statute by filing a successful motion to dismiss under Rule 12(b)(6), an affidavit might never be filed. On the other hand, the Georgia statute requires that the affidavit be filed *with* and at the same time as the complaint, and will, as a result, be required regardless of what the defendant's response to the complaint might be. Ga.Code Ann. § 9–11–9.1(a); *see also* Ill. Stat. ch. 735, §§ 5/2–622 to 623 (1997) (requiring plaintiff in medical malpractice and product liability cases to file an affidavit together with complaint declaring that, *inter alia*, affiant has consulted with expert); Mich. Stat. Ann. § 600.2912d (plaintiff shall file with complaint an affidavit of merit signed by health professional); *see Thompson v. Kishwaukee Valley Med. Grp.*, 1986 WL 11381 (N.D.Ill. Oct.6, 1986) (finding that even Illinois affidavit of merit statute "would not enlarge ... pleading requirements"); *Landstrom v. Illinois Dep't of Children & Family Services*, 699 F.Supp. 1270, 1282 & n. 28 (N.D.Ill.1988), *aff'd mem.*, 892 F.2d 670 (7th Cir.1990) (approving analysis of *Kishwaukee Valley*). The timing of the submission of the Affidavit of Merit statute strongly suggests that it is unrelated to pleading.

Second, the content of the affidavit prescribed by each statute is quite different. N.J.S.A. § 2A:53A–27 requires merely that the affidavit state or opine that "there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices." N.J.S.A. § 2A:53A–27. The affidavit need not contain any facts or evidence; it need only contain a statement of opinion regarding the facts already contained in the complaint. The affidavit thus does not serve to place the defendant on notice of any aspect of the claim not already contained in the complaint and does not *aver* anything of

consequence to the litigation. *See In re Petition of Hall,* 147 N.J. 379, 392, 688 A.2d 81 (1997) (noting that the content of affidavit of merit is "summary in nature" and that the required statement of opinion "need not be accompanied by the same detailed explanation and analysis ... ordinarily ... contained in an expert's report").

In comparison, the Georgia affidavit must "set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each claim." Quite unlike the affidavit required by the New Jersey statute, the affidavit required in Georgia actually supplements, *i.e.,* adds to or goes beyond, the allegations of the complaint. *See* Ga.Code Ann. 9–11–9.1(a); *see also* Mich. Stat. Ann. § 600.2912d (affidavit must contain statements setting forth, *inter alia,* applicable standard of care and the actions which, in professional's opinion, should have been taken or omitted). Thus, functionally, the affidavit does not act as a pleading.[8]

Furthermore, the Affidavit of Merit statute does not affect the mechanics of pleading, that is, the "when" and "how" of the filing and amendment of pleadings, under Rules 8, 9, and 15. An example of a state statute which could reasonably be seen to impact the essential aspects of pleading in federal court is a Florida law which provides that:

> no claim for punitive damages shall be permitted unless there is a reasonable showing of evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages. The claimant may move to amend his complaint to assert a claim for punitive damages as allowed by the rule of civil procedure.

Fla. Stat. Ann. § 768.72 (1997). Because the Florida statute forbids a party from raising a claim for punitive damages in its initial complaint, that is, it affects what one may put in a complaint, numerous Florida courts have found the statute to interfere with the scheme of pleading created by Rule 8. *See Tutor Time Child Care Sys., Inc. v. Franks Investment Group Inc.,* 966 F.Supp. 1188, 1189–90 (S.D.Fla.1997); *State of Wisconsin Investment Bd. v. Plantation Square Assoc., Ltd.,* 761 F.Supp. 1569, 1574–75 (S.D.Fla. 1991) (statute required pleading of evidence and court's evaluation of evidence, and therefore, directly and irreconcilably conflicted with letter and spirit of Rule 8); *but see Neill v. Gulf Stream Coach, Inc.,* 966 F.Supp. 1149, 1153 (M.D.Fla.1997) (state and federal rules may harmoniously co-exist because Rule 8 does not require that all claims be pleaded in first complaint); *Teel v. United Tech. Pratt & Whitney,* 953 F.Supp. 1534, 1539 (S.D.Fla.1997) (recognizing a split of authority within district, and finding that statute did not conflict with Rules 8 and 9 which have no specific timing requirement); *see generally* Rhett Traband, An *Erie Decision: Should State Statutes Prohibiting the Pleading of Punitive Damages Claims be Applied in Federal Diversity Actions?,* 26 Stetson L.Rev. 225 (1996). In comparison, the New Jersey statute does not alter what may or must be contained in a complaint and cannot be characterized as an interference with Rules 8 and 9.

In short, the facts that: 1) the affidavit required by the New Jersey statute may be filed well after initial pleadings are filed, if the affidavit of merit will be filed at all; and 2) the statute does not affect, limit, or impact the content or timing of pleadings in federal court, prevent this Court from finding any

---

**8.** The statute as originally proposed required the plaintiff to file an affidavit of merit within 60 days of filing, and in a subsequent version, service of the complaint. *See* New Jersey Senate, Senate Bill No. 1493 (4th Reprint); Senate Commerce Committee, Statement to Senate Bill No. 1493 (Nov. 10, 1994).

While the early, sparse history of the statute indicated that the proposed legislation was designed to "require a plaintiff in a medical-malpractice action to make a threshold showing that his or her claim is meritorious," *see* Peter Verniero, Janice Mitchell Mintz & Eleanor Heck,

Report to the Governor on the Subject of Tort Reform 4 (dated Sept. 13, 1994); *see also id.* at 7, 9, this statement cannot reasonably be read as an accurate expression of the *legislature's* intent in passing the *final* statute. Not only does the report pre-date the substantial amendments to the statute, including the changes in the timing of the affidavit, but also this *executive* report was commenting on a statutory proposal which by its own admission needed to be (and indeed, would be) "rewritten." *Id.* at 16; *but see Hall,* 147 N.J. at 391, 688 A.2d 81.

conflict with Rules 8 and 9. While the document must be filed in order to avoid a motion to dismiss, on the most basic level, the affidavit of merit simply is not a pleading; it is functionally unrelated, physically separated, and temporally disconnected from the pleading stage of a case. The statute therefore does not conflict with Rules 8 and 9.

### b. Rule 11

█ RTC's second argument is that the Affidavit of Merit statute "overrides Rule 11 which requires *only* that the plaintiff's attorney conduct an investigation and make th[e] assessment [that there exists a reasonable probability that negligence took place]." Plaintiff's Supplemental Brief in Opposition to Motion to Dismiss Complaint 5 (dated Sept. 26, 1997) (emphasis added). Most generously stated, the argument is that the Affidavit of Merit statute requires something that is not required by Rule 11, and therefore, conflicts with Rule 11. A fuller examination of the statute and Rule 11, however, shows that the two operate in substantially different fashions, such that it cannot reasonably be said that there is a conflict between them.

First, the Affidavit of Merit statute requires that a plaintiff consult with an "appropriate licensed person," basically an expert, at some point within 60 days of the filing of an answer. N.J.S.A. § 2A:53A–27. Rule 11 neither demands nor regulates consultation with an expert,[9] and requires that an *attorney*, not necessarily an expert, conduct a reasonable inquiry into the law and facts *before* filing a complaint. Fed.R.Civ.P. 11(a–b) & Advisory Committee's Notes to 1993 Amendments.

Second, the Affidavit of Merit statute mandates that failure to consult with and provide an affidavit from an expert "*shall* be deemed a failure to state a cause of action." N.J.S.A. § 2A:53A–29 (emphasis added). Rule 11, on the other hand, makes sanctions discretion-

ary. Fed.R.Civ.P. 11(c) ("the court may, . . . impose an appropriate sanction").

Third, failure to file an affidavit or otherwise comply with the Affidavit of Merit statute results in dismissal of the action, whereas, Rule 11 allows substantial discretion in fashioning sanctions, and the dismissal of an action is a sanction of last resort. *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1179–80 n. 15 (3d Cir.1993); *Guyer v. Beard*, 907 F.2d 1424, 1429–30 (3d Cir.1990); *Carter v. Albert Einstein Med. Ctr.*, 804 F.2d 805, 807 (3d Cir.1986) (sanction of dismissal reserved for cases where plaintiff causes delay or engages in contumacious conduct and where lesser sanction would not serve ends of justice).

Fourth, Rule 11 specifically allows room for the operation of other statutes which may require an affidavit. *See* Fed.R.Civ.P. 11(a) ("Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit."); *see, e.g., Kishwaukee Valley*, 1986 WL 11381 at *2 (noting that Rule 11 does not forbid affidavit, but merely allows pleadings without affidavit, and finding no conflict between Rule 11 and Illinois statute requiring affidavit regarding expert's medical opinion); *Hill v. Morrison*, 870 F.Supp. 978, 982 (W.D.Mo. 1994) (finding that Rule 11 and Missouri statute requiring affidavit as to expert's medical opinion could both be given effect in federal court). In short, the Court finds that Rule 11 and N.J.S.A. § 2A:53A–27 "can exist side by side, . . . each controlling its own intended sphere of coverage without conflict." *Walker*, 446 U.S. at 752, 100 S.Ct. at 1986; *see generally Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523 (10th Cir.1996) (finding that Rule 11 and Colorado statute requiring affidavit as to expert's medical opinion did not conflict and that failure to apply state law would disserve *Erie* policies); 19 *Federal Practice & Procedure: Jurisdiction* § 4511 & nn. 70.1–70.4 (approving analysis in *Trierweiler* ).[10]

---

9. Nowhere in the federal rules is consultation with an expert required. Rather, Rule 26(b) regulates the disclosure of an expert's report, if one is employed. *See* Fed.R.Civ.P. 26(b).

10. It must be noted that RTC has not suggested that Rules 8, 9, or 11 are unconstitutional or outside the boundaries established by the Rules Enabling Act, 28 U.S.C. § 2072. Indeed, given prior case law on the Rules Enabling Act and the strong presumption of constitutionality, it is un-

## 2. Outcome Determinative

■ Having concluded the there is no conflict between the Affidavit of Merit statute and any of the Federal Rules of Civil Procedure, the Court must now determine whether application of the statute is likely to be determinative of the outcome of a lawsuit. The Court concludes that application of the Affidavit of Merit statute is indeed outcome determinative.

At the outset, it should be noted that the Affidavit of Merit statute was passed as part of a multi-faceted "tort reform" package. The statute was enacted contemporaneously with new or amended statutes on New Jersey's joint and several liability standard, N.J.S.A. § 2A:15–5.2, the liability faced by sellers for injuries caused by a manufacturer's defective products, N.J.S.A. § 2A:58C–2, the liability for punitive damages, N.J.S.A. § 2A:15–5.9 et seq., and the liability of health care providers for defective medical devices which they provide, N.J.S.A. § 2A:58C–11.

The first reason why the statute is outcome determinative is that on its face, the statute evinces an intent to determine conclusively the outcome of litigation. N.J.S.A. § 2A:53A–29 provides:

> If the plaintiff fails to provide an affidavit or a statement in lieu thereof, pursuant to [N.J.S.A. §§ 2A:53A–27 or –28], it shall be deemed a failure to state a cause of action.

That is to say, the statute clearly embodies a substantive decision on the part of the state legislature as to when a cause of action for certain types of professional negligence or malpractice may successfully be prosecuted. Failure to apply the statute would be to alter the core of the cause of action, something which may not be done consistently with *Erie*. *See Ragan*, 337 U.S. at 533–34, 69 S.Ct. at 1234–35.

The second reason why the statute is outcome determinative is that it applies only to a limited class of cases: actions for certain kinds of damages resulting from malpractice or negligence by certain professionals. *See* N.J.S.A. § 2A:53A–27. Even if the state

statute could rationally be classified as "procedural" or to the extent the statute has any "procedural" content, the substantive limitation strongly reflects the state's "intention to influence substantive outcomes ... and would be defeated by allowing parties to shift their litigation into federal court unless the state's rule was applied there as well." *See S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist.*, 60 F.3d 305, 310 (7th Cir.) (Posner, C.J.) (in applying outcome determinative test, one "class of pretty easy cases is where the state procedural rule, though undeniably 'procedural' in the ordinary sense of the term, is limited to a particular substantive area"), *cert. denied*, —— U.S. ——, 116 S.Ct. 566, 133 L.Ed.2d 491 (1995); *see also Gasperini*, 518 U.S. at ——, 116 S.Ct. at 2220 (state statute "contains a procedural instruction, but the [s]tate's objective is manifestly substantive"); *see, e.g., Jarvis v. Johnson*, 668 F.2d 740, 744 (3d Cir.1981) (notwithstanding "procedural" reason for enactment, state statute regarding damages impacted amount of recovery and was found to be, *inter alia*, outcome determinative); *Irizarry v. Digital Equip. Corp.*, 919 F.Supp. 301, 304 (N.D.Ill.1996) (finding statute requiring plaintiff to attach to complaint affidavit regarding consultation with expert in products liability cases to be substantive and applicable in federal court). That the New Jersey statute embodies substantive state policy judgments is made even more clear by virtue of its being part of a broad legislative package to reform New Jersey tort law. *See, e.g., Neill*, 966 F.Supp. at 1155.

Third, because the statute acts as a deterrent to frivolous malpractice actions, the Court sees no reason why federal courts should flout state policy choices and allow litigants to avoid the state's extra measure of deterrence by choosing the federal forum. Indeed, in any borderline malpractice case (exactly the cases in which the Affidavit of Merit statute makes the most difference), where a plaintiff's attorney is unable or unlikely to secure an affidavit of merit, holding the Affidavit of Merit statute inapplicable in federal court would promote an intolerable

likely that any challenge on this score could be mounted. *See Business Guides, Inc. v. Chromatic Comm. Enterprises*, 498 U.S. 533, 111 S.Ct. 922,

112 L.Ed.2d 1140 (1991); *Burlington*, 480 U.S. at 6, 107 S.Ct. at 970.

level of forum-shopping and would provide a safe harbor for those malpractice actions that the state aims to preclude. *See, e.g., Hum v. Dericks,* 162 F.R.D. 628, 636 (D.Haw.1995) (finding state screening statute inapplicable in federal court and noting that intolerable forum-shopping is forum-shopping with negative consequences, not forum-shopping for mere convenience). Furthermore, there seems to be no principled reason for allowing borderline cases involving diverse parties into federal court, where those very same cases could not be maintained in the courts of the state which created the cause of action. In addition, failure to apply the state statute would result in further inequitable administration of the law by denying "licensed persons" the protections from frivolous or meritless lawsuits based solely on their involvement in a controversy with diverse parties. *See, e.g., Stoner v. Presbyterian Univ. Hosp.,* 609 F.2d 109, 111 (3d Cir. 1979) (benefits of requirement of arbitration in medical malpractice cases should not be denied to non-resident defendant); *Hill,* 870 F.Supp. at 982; *Kanouse,* 505 F.Supp. at 131.

### 3. Balancing Federal and State Interests

■ Having determined that the Affidavit of Merit statute does not conflict with any federal statute or rule and that the Affidavit of Merit statute is outcome determinative, the Court must determine whether any overriding federal interests require the application of federal law. Admittedly, the federal interests in this case, which was removed from a state court to this Court, are minimal.

However, the one federal interest is the interest in maintaining the systemic integrity of the federal pleading scheme. *See, e.g., Gasperini,* 518 U.S. at ——, —— – ——, 116 S.Ct. at 2221, 2224–25 (noting that courts should attend to "'essential characteristic[s]' of the federal court system" under *Byrd*); *Connolly v. Foudree,* 141 F.R.D. 124, 127 (S.D.Iowa.1992) (finding state statute requiring early disclosure of expert's identity in professional liability cases applicable in federal court). In large measure, the federal interest in protecting the independence of the federal system of pleading is already protected by the *Hanna* test. That is, if a court determines that a federal rule of civil procedure and the state statute are in conflict, the federal rule applies and thereby protects the interests embodied in the federal rule. Thus, an "essential characteristic" inquiry would seem at least somewhat redundant where that characteristic is already fully embodied in a federal statute or rule. Nonetheless, because the Court can conceive of no aspect of federal practice or procedure which might be altered by application of the Affidavit of Merit statute,[11] because the issue is not covered by a federal rule, and because the state statute is outcome determinative, the state statute will apply.

### C. Licensed Person

■ Having determined that the Affidavit of Merit statute must be applied by a federal court sitting in diversity, I must determine whether the statute applies in this action alleging malpractice by Caine, DiPasqua. The question the Court must answer is whether an out-of-state law firm not qualified

11. For example, where a defendant challenges the adequacy of a plaintiff's affidavit, *see, e.g., Cornblatt v. Barow,* 303 N.J.Super. 81, 696 A.2d 65 (App.Div.1997), *certif. granted* (Sept. 25, 1997), the district courts will be able to entertain such a challenge on a motion to dismiss. Because the affidavit of merit is not interposed in order to supplement the pleadings, as with a motion to dismiss on any other grounds, factual allegations not already in the complaint, but inadvertently contained in the affidavit, should be considered exclusively for the limited purposes of evaluating whether the affidavit satisfies the requirements of N.J.S.A. § 2A:53A–27. I underscore that a challenge to the affidavit of merit should not be confused with a challenge to the factual sufficiency of the complaint, more appropriately made on a motion for summary judgment. Because the expert-affiant is not necessarily a witness at trial, *see* N.J.S.A. § 2A:53A–27 (expert-affiant "shall have no financial interest in the outcome of the case under review, but ... shall not [be] exclude[d] from being an expert witness in the case"), and the affidavit is not necessarily admissible or inadmissible at trial, it would seem that once an adequate affidavit has been submitted, thus avoiding a motion to dismiss on the basis of a failure to submit the affidavit, the affidavit would not likely arise again, except, perhaps, to cross-examine the expert-affiant who does testify at trial.

to practice in New Jersey can be a "licensed person admitted to practice law in New Jersey" under N.J.S.A. § 2A:53A–26. Without any authority among the New Jersey courts as to how the statute should be applied, the Court must predict how the New Jersey Supreme Court would resolve this question. *See Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 378 (3d Cir.1990). The Court predicts that the New Jersey Supreme Court would find that such a firm cannot fit within this definition and cannot claim the protections provided by the statute, *i.e.*, it cannot demand that an affidavit of merit be filed in a malpractice case against it pursuant to N.J.S.A. § 2A:53A–27.

Some background on the practice requirements for New Jersey lawyers established by the New Jersey Supreme Court is helpful in order to determine whether Caine, DiPasqua fits within the statutory definition of "licensed person." In order to be qualified to practice law in New Jersey, among other things, an attorney must be admitted to the bar of New Jersey, must be in good standing, and must maintain a "bona fide office for the practice of law" in New Jersey, a requirement taken quite seriously by New Jersey courts. *See* N.J.R. Ct. 1:21–1(a) (1997); *see, e.g., Matter of Kasson*, 141 *N.J.* 83, 86–87, 660 A.2d 1187 (1995); *Tolchin v. Supreme Court of the State of New Jersey*, 111 F.3d 1099 (3d Cir.) (extensively reviewing policies behind "bona fide office" rule), *cert. denied,* —— U.S. ——, 118 S.Ct. 435, 139 L.Ed.2d 334 (1997). At the time the allegedly negligent opinion letter was prepared, on August 29, 1988, a "bona fide office" was defined as:

> a place where the attorney or a responsible person acting on the attorney's behalf can be reached in person and by telephone during normal business hours. A bona fide office is more than a maildrop, a summer home that is unattended during a substantial portion of the year, an answer-

ing service unrelated to a place where business is conducted.

N.J.R. Ct. 1:21:1(a) (1987).

On the record before the Court, it seems quite clear that Caine, DiPasqua was, at the time of the 8/29/88 Opinion Letter, practicing law in New Jersey in violation of the New Jersey Court Rules and the Rules of Professional Conduct ("RPC"). First, despite the quaint suggestion by counsel at oral argument that one need not be qualified to practice in New Jersey to do what Caine, DiPasqua did, that firm was both certainly practicing law and certainly doing so in New Jersey by preparing an opinion letter on numerous aspects of New Jersey law and holding itself out in the opinion letter as "members of the bar of New Jersey." [12] *See, e.g., In re Opinion No. 26 of the Comm. on the Unauthorized Practice of Law,* 139 *N.J.* 323, 339, 654 A.2d 1344 (1995) (separating elements of real estate transaction into practice of law and other activities, and including among former analysis of title search and explanation of its significance); *In re Waring's Estate,* 47 N.J. 367, 375–77, 221 A.2d 193 (1966); *Appell v. Reiner,* 43 N.J. 313, 204 A.2d 146 (1964) (finding that, absent exceptional circumstance, legal services to New Jersey residents with respect to New Jersey matters may only be provided by counsel who can practice in New Jersey); *New Jersey State Bar Assoc. v. Divorce Ctr. of Atl. Cty.,* 194 N.J.Super. 532, 540, 477 A.2d 415 (Ch.Div.1984) (consultation, advice, and assistance with respect to legal forms was practice of law in New Jersey).

Second, on the record before the Court, Caine DiPasqua was practicing law in New Jersey in violation of New Jersey's "bona fide office" rule. From its letterhead, it is clear that Caine, DiPasqua does not maintain any office, let alone a "bona fide" office, in New Jersey. Furthermore, counsel for Caine, DiPasqua did not rebut the Court and RTC's suggestion that Caine, DiPasqua did not have a bona fide New Jersey office, and

---

**12.** The 8/29/88 Opinion Letter stated that: "We are members of the bar of the State of New Jersey and do not purport to be expert on, or to express any opinion herein concerning, any laws other than the laws of the State of New Jersey and the Federal laws of the United States, and this opinion is limited to matters arising under and governed by the laws of the State of New Jersey." 8/29/88 Opinion Letter at 5.

admitted that Nigro did not have a New Jersey office.[13]

That said, the Court must predict how the New Jersey Supreme Court would decide whether an out-of-state law firm not qualified to practice law in New Jersey can be a "person who is licensed as an attorney admitted to practice in New Jersey." I predict that the New Jersey Supreme Court would find that a firm such as Caine, DiPasqua, *i.e.*, one without a bona fide office in New Jersey, cannot be "licensed" within the meaning of the statute.

An examination of the other categories of professions listed in N.J.S.A. § 2A:53A–26 reveals that behind the use of the term "licensed" is a fairly clear legislative intent to reach those who could lawfully practice their professions in New Jersey. *See, e.g.,* N.J.S.A. §§ 45:3–5 ("[a] person shall, before entering the practice of architecture in this State, first apply to the board for a license"), 45:3–10 ("No person except an architect licensed in the State of New Jersey shall engage in the practice of architecture"); 45:6–13 ("No person shall practice dentistry within the meaning of this chapter unless licensed to do so"); 45:8–36 ("The board shall issue a license certificate upon payment of the application fee ... to any applicant who ... has satisfactorily met the requirements of this chapter, and who has paid the license fee.... The issuance of a license certificate by this board shall be evidence that the person named therein is entitled to all the rights and privileges of a licensed professional engineer"); 45:8–39 (providing penalties for practice of engineering without legal authorization or with forged license);

45:9–6 ("all persons commencing the practice of medicine or surgery in this State shall apply to the board for a license to do so."); 45:5–11 (providing for penalties for "[w]hoever practices podiatry in this State without first having obtained and filed the license herein provided for"); 45:11–37(a) (providing for penalties for practice of professional nursing without effective license); 26:2H–12 ("No health care facility shall be operated unless it shall (1) possess a valid license issued pursuant to this act"); *see generally New Jersey State Bar Assoc. v. Berman,* 259 N.J.Super. 137, 150–52, 611 A.2d 1119 (App. Div.1992) (statutory language indicated clear legislative intent to reach only those eligible to practice in New Jersey). Because the statute does not require an affidavit of merit in a suit alleging malpractice against a surgeon, dentist, or nurse who is not eligible to practice in New Jersey by virtue of not having a license, there seems to be no reason to read the affidavit of merit requirement to apply to a law firm which is not eligible to practice in New Jersey.[14]

Additionally, in limiting the instances where an affidavit of merit is required to those practicing within the parameters established by the New Jersey Supreme Court, the statute may easily be read as providing a "shield" available only to those otherwise complying with state-mandated prerequisites to practice. Allowing those professionals who do not comply with such prerequisites to claim the protections of the statute seems, at best, anomalous, if not in direct contravention of the state's policies regarding professional qualifications. Therefore, because no affidavit of merit was required within 60 days

**13.** Additionally, without a bona fide office in New Jersey, Caine, DiPasqua was unable to designate someone at the firm who was responsible for its New Jersey practice pursuant to RPC 7.5(b) (where "name of an attorney not licensed to practice in [New Jersey] is used in a firm name, any advertisement, letterhead or other communication containing the firm name must include the name of at least one licensed New Jersey attorney who is responsible for the firm's New Jersey practice or local office thereof").

On the record before the Court, no opinion can be expressed as to whether Caine, DiPasqua or Nigro complied with the numerous other rules demanded of attorneys practicing in New Jersey. *See, e.g.,* N.J.R. Ct. 1:21–6 (concerning record-

keeping and bank accounts), 1:28–1 (concerning mandatory payments to Lawyers' Fund for Client Protection) (formerly R.R. 1:22A–1), and 1:28A–2 (concerning attorney trust accounts and interest thereon).

**14.** It should be noted that the statute as proposed defined "licensed person" without exclusive reference to the notion of licensure. *See, e.g.,* Senate No. 1493 (Oct. 3, 1994) (" 'licensed person' means any person who is licensed, registered, or certified" by any of a number of boards listed in *N.J.S.A.* 45:1–15). The boards listed in N.J.S.A. § 45:1–15, however, did not include the State Board of Bar Examiners.

of the filing of Caine, DiPasqua's answer to RTC's Complaint, Caine, DiPasqua's motion to dismiss the Complaint for failure to submit the affidavit will be denied.[15]

### D. Impact of *Cornblatt v. Barow*

■ On July 7, 1997, the Superior Court of New Jersey, Appellate Division, decided *Cornblatt v. Barow*, 303 N.J.Super. 81, 696 A.2d 65 (App.Div.1997), *certif. granted* (Sept. 25, 1997). The Appellate Division held, among other things, that a claim against an attorney for legal malpractice is a claim for property damage within the meaning of N.J.S.A. § 2A:53A–27. While the issue was not argued before the Appellate Division or completely briefed, and the Appellate Division held that the issue had been waived, *id.* at 91–92, 696 A.2d 65, that court noted that the statute should apply to all actions filed after the effective date of the statute, June 29, 1995, rather than to all acts of negligence or malpractice which occurred after the effective date. On August 6, 1997, the New Jersey Supreme Court stayed the effect of the Appellate Division judgment, *Cornblatt v. Barow*, Case No. M–1672/1673, Order (dated Aug. 6, 1997), and granted certification on September 25, 1997. To say the least, the Appellate Division's decision with respect to the meaning of the effective date of the statute has sparked some controversy in the New Jersey legal community.

It is true that a decision by the New Jersey Supreme Court holding that the Affidavit of Merit statute applies only to causes of action which accrued after the effective date of the statute, would mean that RTC, whose cause of action accrued before June 29, 1995, would not be required to file an affidavit of merit in this action. Such a holding would make unnecessary this Court's determination of the issue of whether Caine, DiPasqua is a "licensed person" within the meaning of N.J.S.A. § 2A:53A–27. However, this case is a poor candidate for the exercise of this Court's discretion to abstain from deciding the motion before it.

First, none of the parties advanced with any seriousness the idea that the Court should not decide the motion before it. Caine, DiPasqua once sheepishly suggested by letter that the Court "may wish to defer ruling on the pending dismissal motion for a month or two in case the [New Jersey] Supreme Court issues a quick ruling." Letter from Michael S. Miller (dated Sept. 26, 1997). Nonetheless, knowing of the controversy and attention generated by the Appellate Division's decision in *Cornblatt* and the New Jersey Supreme Court's stay of the judgment in that case, Caine, DiPasqua also argued at great length that "it is not *Cornblatt*, but the plain meaning of the [Affidavit of Merit] statute, that suggests that [RTC's] affidavit was untimely filed." Defendant, Caine DiPasqua's Reply Memorandum of Law 5 (dated Aug. 20, 1997); *see also id.* at 6–12. RTC also suggested that a stay might be warranted, but *only* if the Court were called upon to address the issue before the New Jersey Supreme Court, the meaning of the effective date of the Affidavit of Merit statute. *See* Letter from Jonathan L. Goldstein (dated Sept. 4, 1997).

It is abundantly clear that neither party suggested that the Court should shy away

---

**15.** Because the original Complaint filed by RTC cannot be read as alleging malpractice by Nigro, *see* n. 1, *supra*, I need not address or decide the question of whether an out-of-state attorney who is admitted to the bar of New Jersey, but who does not maintain a bona fide office in New Jersey, could avail himself or herself of the protections afforded by the statute.

In response to a request by the Court, the parties briefed the question of whether the Affidavit of Merit statute violates the New Jersey Constitution, specifically the Separation of Powers clause, N.J. Const. art. III, ¶ 1, or N.J. Const. art. VI, § 2, ¶ 3, which vests the New Jersey Supreme Court with exclusive authority over legal practice and procedure, and attorney discipline. *See, e.g., McKeown–Brand v. Trump Castle Hotel & Casino*, 132 N.J. 546, 626 A.2d 425 (1992); *Winberry v. Salisbury*, 5 N.J. 240, 74 A.2d 406, *cert. denied*, 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 638 (1950). Because the motion will be denied, the Court need not consider these issues. Moreover, questions of state constitutional law are generally, if possible, best left in the first instance to state supreme courts. *Arizonans for Official English v. Arizona*, —— U.S. ——, ——, ——, 117 S.Ct. 1055, 1059, 1074, 137 L.Ed.2d 170 (1997); *see, e.g., Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 963 F.Supp. 395, 408 (D.N.J.1997).

from the statute entirely;[16] each side made the quite distinct argument that the Court should entertain the idea of a stay *only* if it were impossible to decide the motion without deciding the issue raised in *Cornblatt.* *See, e.g., Roginsky v. Richardson–Merrell, Inc.,* 378 F.2d 832, 842 n. 16 (2d Cir.1967) (Friendly, J.) (desire of party with respect to stay pending outcome of similar suit in state court was factor in deciding not to stay federal litigation).

■ Second, as a general rule, when a federal court has jurisdiction over a case solely by virtue of diversity of citizenship, mere difficulties and uncertainties in ascertaining the meaning of state law do not, in themselves, present a sufficient basis for declining to exercise that jurisdiction. *See, e.g., Meredith v. Winter Haven,* 320 U.S. 228, 234–35, 64 S.Ct. at 10–11 (1943). As a general matter, federal courts have the obligation to exercise the jurisdiction given to them, an obligation which has been described as "virtually unflagging." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817–18, 96 S.Ct. 1236, 1246–47, 47 L.Ed.2d 483 (1976). The only conceivable basis upon which this Court might abstain from deciding this motion and await the filing of the New Jersey Supreme Court's opinion in *Cornblatt* would be *Thibodaux* abstention, as first announced in *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) (finding abstention proper in order to allow state court to determine whether city had legal authority to employ eminent domain power, where state law was unclear), and restated by *Colorado River.*[17] In *Colorado River,* the Supreme Court found abstention on the basis of *Thibodaux* "appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1244; *see, e.g., Kaiser Steel Corp. v. W.S. Ranch Co.,* 391 U.S. 593, 594, 88 S.Ct. 1753, 1754–55, 20 L.Ed.2d 835 (1968) (allocation of water rights is of vital concern to New Mexico and pending decision before New Mexico court on issue warranted abstention); *Lac D'Amiante du Quebec, Ltee. v. American Home Assurance Co.,* 864 F.2d 1033, 1044 (3d Cir.1988) (noting preference for "discrete approach" to applying individual abstention doctrines); *Smith v. Metropolitan Prop. & Liab. Ins., Co.,* 629 F.2d 757 (2d Cir.1980) (employing Thibodaux abstention).

However, completely apart from whether this Court is presented with a policy problem of such substantial import that abstention is warranted, I am greatly troubled by the notion of abstaining from deciding this motion in the hope that, at some point during the current term of the New Jersey Supreme Court, that court will decide *Cornblatt* in such a way that makes resolution of the issue of whether Caine, DiPasqua is a "licensed person" unnecessary.

The fact is that under any foreseeable outcome of *Cornblatt,* the claims against Caine, DiPasqua will survive and litigation in this Court will continue. For example, if the New Jersey Supreme Court finds that the Affidavit of Merit statute applies only to those actions which accrued after the effective date of the statute, then the claims against Caine, DiPasqua would still survive because no affidavit of merit would be required of RTC. If the New Jersey Supreme Court affirms the Appellate Division's interpretation of the effective date of the Affidavit of Merit statute, the claims against Caine, DiPasqua will survive because this Court's holding on the "licensed person" issue would be no different in the future. Finally, even if

**16.** Indeed, when the Court raised the issue of whether Caine, DiPasqua was a "licensed person" within the meaning of the statute, *see* Letter (dated Sept. 17, 1997), RTC advanced that issue quite persuasively before the Court as an alternative ground for denial of the motion, if the Court found the statute applicable in federal court. Furthermore, at oral argument, devoted in large part to the "licensed person" issue, Caine, DiPasqua never suggested that a stay was warranted, and instead addressed the "licensed person" issue head-on.

**17.** *Colorado River* abstention is not applicable in this case because the litigation in state court is not "duplicative," and the result of this Court's decision would not make adjudication "piecemeal" in any sense. *See Colorado River,* 424 U.S. at 818–19, 96 S.Ct. at 1246–47.

the New Jersey Supreme Court were to declare the Affidavit of Merit unconstitutional, *see* n. 15, *supra,* this litigation will still continue.

The disservice to the litigants in this case which would be caused by a stay, pending resolution at some unpredictable moment in time of another issue in another case involving different litigants, a resolution which will not affect the substantive outcome of the federal litigation, does not justify abstention. *See, e.g., Commerce Oil Refining Corp. v. Miner,* 303 F.2d 125 (1st Cir.1962) (delay, difficulty of predicting effect of state court litigation, and burden on parties should be considered in deciding whether to abstain, pending state court litigation); *Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Coop.,* 896 F.Supp. 912 (E.D.Ark.1995) (finding, after circuit court remanded for district court to determine whether stay pending state court decision was proper, that state court litigation could not affect outcome of federal court litigation).[18] For these reasons, the Court will not abstain from deciding the motion, and the motion will be denied.

## IV. Conclusion

For the reasons set forth above, the motion of Caine, DiPasqua to dismiss the Complaint and all cross-claims asserted against it will be denied.

---

**18.** It should be noted that the availability of a procedure certifying novel, unsettled questions of state law "greatly simplifies the [abstention] analysis." *Bellotti v. Baird,* 428 U.S. 132, 150–51, 96 S.Ct. 2857, 2868, 49 L.Ed.2d 844 (1976). Certification is also much less "cumbersome" a procedure than abstention. *Virginia. v. American Booksellers Association, Inc.,* 484 U.S. 383, 395, 108 S.Ct. 636, 644, 98 L.Ed.2d 782 (1988); *see also Arizonans for Official English,* —— U.S. at ——, ——, 117 S.Ct. at 1073, 1075; *Lehman Bros. v. Schein,* 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974) (certification does "save time, energy, and resources and helps build a cooperative judicial federalism"); *Nemours Found v. Manganaro Corp., New England,* 878 F.2d 98 (3d Cir.1989) (distinguishing between certification and abstention). Several district and circuit judges have decried the lack of a certification procedure in New Jersey. *See, e.g., Hakimoglu v. Trump Taj Mahal Assoc.,* 70 F.3d 291, 292–93 & n. 2, 302–04 (3d Cir.1995) (Becker, J., dissenting, joined in part by Nygaard and Alito, J.J.); *Hulmes v. Honda Motor Co.,* 924 F.Supp. 673, 678 (D.N.J.1996); *Tyson v. CIGNA Corp.,* 918 F.Supp. 836, 839 n. 3 (D.N.J.1996) (Irenas, J.). .